MARGARET J. STEVENSON *v.* ROBERT L. STEVENSON *v.* JOSEPH N. STEVENSON AND CAROL O. STEVENSON.

[No. 1-876A131. Filed July 5, 1977.]

*Donald F. Foley, Yaeger, Foley & McLin*, of Indianapolis, for appellant.

*Robert L. Stevenson,* pro se, of Columbus, *Frank G. Kramer, Ewbank, Meyer, McCarty & Kramer,* of Lawrenceburg, for appellees-intervenors.

### Nature of the Case

LOWDERMILK, J.—Petitioner-appellant, Margaret J. Stevenson (Margaret) brought this action seeking to have her marriage with respondent-appellee, Robert L. Stevenson (Robert) dissolved. Also, Margaret sought custody of Christina Ghuman. Christina was the granddaughter of Margaret and Robert as well as their legally adopted child. Robert filed a counter-petition which sought the same relief. Intervenors-appellees, Joseph N. and Carol O. Stevenson (Joseph and Carol), are the son and daughter-in-law of Margaret and Robert. Their petition for intervention prayed that the custody of Christina be awarded to them.

### Facts

The facts necessary for our disposition of this appeal are as follows: On August 19, 1975, Margaret filed a petition which sought to have her marriage with Robert dissolved. On September 5, 1975, Robert filed a counter-petition which sought the same relief. On December 19, 1975, the trial court granted Joseph's and Carol's petition to intervene. All of the petitioners in this action sought to be awarded the custody of Christina.

Margaret and Robert had two children born of their marriage—Joseph, one of the intervenors in the case at bar, and Marjorie. Following her marriage to Bernard Roberts, on May 24, 1965, Marjorie had a child which was named Christina. Marjorie and Bernard obtained a divorce in 1969.

In June of 1971, Marjorie was diagnosed as having a brain tumor. In March of 1973, Marjorie married Vic Ghuman. On June 15, 1975, Marjorie died as a result of her brain tumor.

On February 10, 1972, Margaret and Robert adopted Christina who continued to live with Marjorie. Christina's name was not changed from Roberts to Stevenson. On July 1, 1974, Christina's name was changed from Roberts to Ghuman. The purpose of the adoption was to prevent Bernard Roberts from obtaining the custody of Christina following the death of Marjorie.

On February 5, 1976, the trial court entered its decree which, *inter-alia*, awarded the custody of Christina to the intervenors—Joseph and Carol.

## Issues

1. Whether the trial court erred in granting Joseph and Carol custody of Christina when neither they nor Robert first proved Margaret to be unfit.

2. Whether the trial court had the discretion to take the custody of Christina from Margaret and grant such custody to Joseph and Carol based upon evidence relating only to what was in the best interest of Christina.

3. Whether the trial court erred in granting custody to Joseph and Carol when it failed to make a finding of fact that Margaret was unfit.

4. Whether the adoption decree of the Bartholomew Circuit Court, rendered four years before the trial was *res judicata* as to the fitness of Margaret and as to the best interest of Christina.

5. Whether the Jennings Circuit Court had jurisdiction to collaterally attack the adoption decree of the Bartholomew Circuit Court.

6. Whether a court of equity can grant a petition for custody to parties who, prior to trial, have wrongfully taken the child in question from its mother thereby benefiting from their wrongful acts.

7. Whether the court erred in granting Joseph's and Carol's petition for custody when there was an agreement between Margaret and Robert that Margaret would have custody of Christina.

8. Whether the court erred in admitting, over objection, testimony which included statements of Marjorie, such being hearsay.

9. Whether the court erred in admitting, over objection, a letter containing conversations between Marjorie and her attorney, such being hearsay.

10. Whether the court erred in permitting Dr. Edward Shipley to testify, over objection, as to assumptions he had made in regard to the fitness of Margaret, when he had not interviewed her, and, when such assumptions were not solicited by proper hypothetical questions.

### Discussion and Decision

#### Issues One and Two

Because of the similarity of Margaret's assignments of error one and two, we have elected to consolidate them and to discuss them concurrently.

Margaret contends that since she was Christina's adopting mother it was incumbent upon Joseph and Carol, being neither Christina's natural or adopting parents, to first prove by clear and convincing evidence that she was unfit to be awarded the custody of Christina before presenting any evidence on what would be in the best interests of Christina. In essence, Margaret contends that in the case at bar there exists a presumption that it would be in the best interests of Christina that she be awarded custody and Joseph and Carol have failed to overcome this presumption.

Joseph and Carol contend that since Margaret is only the adopting mother of Christina she is entitled to no presump-

tion which would favor her having custody of Christina, and, in any event, the presumption was overcome by the evidence.

The case of *Hendrickson* v. *Binkley* (1974), 161 Ind. App. 388, 316 N.E.2d 376, *cert. denied,* 423 U.S. 868, states the rule to be followed in resolving custody disputes between natural parents and third-parties. Therein, at p. 380, the court stated the rule to be as follows:

". . . First, it is presumed it will be in the best interests of the child to be placed in the custody of the natural parents.[1] Secondly, to rebut this presumption it must be shown by the attacking party that there is, (a) unfitness, (b) *long acquiescence, or* (c) *voluntary relinquishment* such that the affections of the child and third party have become so interwoven that to sever them would seriously mar and endanger the future happiness of the child. The third step is that upon a showing of one of these three factors, then it will be in the best interests of the child to be placed with the third party." (Footnote added) (Our emphasis)

The salutary effect of the presumption favoring the natural parent was stated in *Hendrickson, supra,* at p. 381 to be as follows:

"Similarly, in custody cases, especially as here where a certain permanency of custody is involved, the court cannot determine that it is in the best interests of the child to be placed within the custody of a third party, as against the presumption favoring the natural parent, unless the trial court has first determined from clear and cogent evidence that there is either unfitness of the appellant, long acquiescence, or voluntary relinquishment. If the 'best interest rule' was the only standard needed without anything else, to deprive the natural parent of custody of his own child, then what is to keep the government or third parties from passing judgment with little, if any, care for the rights of natural parents. In other words, a child might be taken away from the natural parent and given to a third party simply by showing that a third party could provide the better things in life for the child and therefore the 'best interest' of the child would be satisfied by being placed with a third party."

1. IC 1971, 31-1-11.5-21 (Burns Supp. 1976) makes it clear that this presumption does not exist when a child custody dispute exists solely between parents.

Although the *Hendrickson* rule applied only to natural parents and their custody disputes with third-parties, we are of the opinion that the same presumption should exist in favor of adopting parents when embroiled in a child custody dispute with third-parties. This court is aware of no reason which would justify treating adopting parents and natural parents differently in this regard. See, IC 1971, 31-3-1-9 (Burns Code Ed.).

In the case at bar the record discloses that the presumption which favored Margaret being awarded the custody of Christina was rebutted.

It is undisputed that subsequent to the adoption order of February 10, 1972, Margaret and Robert allowed Christina to remain in the custody of Marjorie until her death in June of 1975. As noted above, Marjorie married Vic Ghuman in March of 1973, lived with him, and changed Christina's name to Ghuman in July of 1974.

Margaret contends that Joseph and Carol should not be allowed to rebut the presumption favoring natural or adopting parents by availing themselves of the argument that she acquiesed in the custody of Christina remaining in another, or voluntarily relinquished the custody of Christina to another, because only the party to whom custody was relinquished may properly raise this argument. Further, the custody of Christina following her adoption by Margaret and Robert remained in Marjorie, her mother, and not in Joseph and Carol. We disagree.

This court can see no reason why in a child custody dispute between natural or adopting parents and third parties, where the natural or adopting parents have relinquished custody of their child to another, that *only* the party to whom the child was relinquished may show such parental conduct in order to overcome the presumption which exists in favor of the natural or adopting parents. *Hendrickson, supra.*

It must be remembered that what is being presumed is that it would be more in keeping with the best interest of the child to award custody to the natural or adopting parents rather than to third-parties. The reasons for the existence of the presumption are obvious. However, the reasons which favor a child being placed in the custody of his natural or adopting parents, such as parental love and guidance, no longer exist once the parents voluntarily relinquish the custody of their child to another. It appears to this court that this is true whether the party seeking to overcome the presumption favoring parents has the custody of the child or not, albeit, as far as the wlefare of the child is concerned, an even stronger case for the elimination of the presumption exists when the third-party seeking custody of the child was the party to whom custody was relinquished by the natural or adopting parents.

## Issue Three

Margaret contends that the trial court erred by not including in its dissolution decree a finding of fact that she was unfit to have the custody of Christina.

The record in the case at bar fails to disclose that either party requested the trial court to make findings of fact. Nor, is this case one in which the trial court, even absent a request, must make special findings of fact and state its conclusions thereon. See, Ind. Rules of Procedure, Trial Rule 52(A). Therefore, in the absence of a request by one of the parties that the trial court make special findings of fact no error is committed by the trial court in not *sua sponte* making special findings of fact. See, TR 52 (A); *Lamb* v. *Conder* (1975), 166 Ind. App. 293, 335 N.E.2d 625; *Weiss* v. *Weiss* (1974), 159 Ind. App. 231, 306N.E.2d 120.

## Issues Four and Five

Margaret contends that the judgment of the Jennings Circuit Court awarding custody of Christina to Joseph and

Carol is a collateral attack upon the adoption decree of the Bartholomew Circuit Court entered February 10, 1972, and, further, the adoption decree which found it to be in the best interest of Christina to become the legal ward of Margaret and Robert is conclusive under the *res judicata* doctrine. We find no merit in either contention.

The case at bar does not represent a collateral attack upon a final judgment entered by the Bartholomew Circuit Court, rather, it represents an independent cause of action commenced by Margaret in which the custody of Christina must necessarily be decided.

Further, we are of the opinion that Margaret's *res judicata* argument cannot prevail. It can immediately be seen that the parties in the case at bar are not the same parties as were before the Bartholomew Circuit Court. As was said in *McCarthy* v. *McCarthy* (1974), 159 Ind. App. 540, 308 N.E.2d 429 at p. 431:

> "The doctrine of *res judicata* arises to bar further litigation in an action which was or could have been adjudicated in a prior suit. The basic elements of *res judicata* were stated in the case of Crown Point Community School Corp. v. Richards (1972), 154 Ind. App. 545, 290 N.E.2d 449, 452, as follows:
>
> ' "The basic elements of res adjudicata are fourfold: (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the matter now in issue was, or might have been, determined in the former suit; (3) *the particular controversy adjudicated in the former action must have been between the parties to the present suit;* and (4) judgment in the former suit must have been rendered on the merits." '
>
> See, also, Cureton v. Lyman S. Ayres, et al. (1972), 153 Ind. App. 495, 287 N.E.2d 904." (Our emphasis)

Issue Six

Margaret cites to this court two time honored equitable maxims, "he who comes into equity must come with clean hands" and "he who seeks equity must do equity." She then

contends that a conspiracy existed between Robert, Joe, and Carol to deprive her of the custody of Christina.

Assuming, without deciding, that Margaret is correct in her contention her argument overlooks the central issue which the trial court had before it for decision. The trial court was called upon to decide what was in the best interest of Christina and not what was in the best interests of Margaret, Robert, Joe, or Carol. The trial court in resolving this difficult question could certainly consider the conduct of the adult parties among themselves as having some bearing upon the welfare of Christina; however, this would be just one of many variables which the trial court could properly consider.

## Issue Seven

Margaret contends that the trial court erred by not awarding her the custody of Christina because this was the oral agreement she had with Robert as incorporated in her petition seeking dissolution.

It is the opinion of this court that no agreement between parties seeking to have their marriage dissolved which affects the custody of a child is binding upon the trial court. Although the wishes of the parents in this matter are entitled to some weight it is the duty of the trial court to determine what is in the best interests of the child. See, IC 31-1-11.5-21 (Burns 1976 Supp.).

## Issues Eight and Nine

Margaret contends that the trial court erred by admitting hearsay statements into evidence during the trial. Specifically, Joseph was allowed to testify concerning a statement Marjorie made to him before her death, and, a letter prepared by Allen Goltra, at Marjorie's request, was admitted into evidence. From both the oral statement and letter it could have been inferred that it was the wish of Marjorie that Joseph and Carol have custody of Christina.

Margaret is correct in her contention that the above mentioned evidence was hearsay and should not have been admitted at trial; however, it is the opinion of this court that the error committed in admitting this evidence was harmless. See, TR. 61.

The case at bar was tried to the bench without benefit of jury. The statements complained of would have allowed the trial court to infer that it was Marjorie's desire that Joseph have custody of Christina. As noted above, the central issue in this lawsuit is what would be in the best interest of Christina. Assuming it was Marjorie's desire that Joseph take care of Christina after her death, and the record is conflicting on this point, such would not be determinative of what would be in the best interest of Christina. Therefore, the relative importance of the hearsay statements of which Margaret complains would be slight. Further, the record discloses by ample evidence, without the complained of hearsay statements, that the trial court did not abuse its discretion in determining that the best interest of Christina would be served by awarding her custody to Joseph and Carol.

Issue Ten

Margaret contends that the trial court erred by permitting Doctor Edward Shipley to testify about assumptions he had made concerning the fitness of Margaret without having interviewed her, and, without benefit of proper hypothetical questions.

The record fails to disclose that this assignment of error was included in Margaret's motion to correct errors. Therefore, this assignment of error is waived. TR. 59 (G) ; *Boles* v. *State* (1975), 163 Ind. App. 196, 322 N.E.2d 722.

Judgment affirmed.

Robertson, C.J., concurs; Garrard, J., participating by designation, concurs with opinion.

## CONCURRING OPINION

GARRARD, J.—I agree with the majority that while the reasons to support the rule may differ, the same criteria that apply to natural parents apply to depriving adoptive parents of custody.

Here, the court was not required to make special findings in the absence of a request by either party. Indiana Rules of Procedure, Trial Rule 52; *Franks* v. *Franks* (1975), 163 Ind. App. 346, 323 N.E.2d 678. Accordingly, since the record contains substantial evidence of probative value from which the trial court could have concluded that Mrs. Stevenson was unfit, the judgment should be affirmed.[1]

NOTE.—Reported at 364 N.E.2d 161.

1. I would find the res judicata argument inapposite since all the conduct in question occurred after the adoption proceedings were completed.