In the Matter of The HAWAII CORPORATION, Debtor.

John T. GOSS, Trustee of the Estate of The Hawaii Corporation, Plaintiff,

v.

Randolph CROSSLEY; Denis Alexander; R. A. Anderson; John A. Calfas; George Q. Cannon; Henry D. Clarke, Jr.; Samuel A. Cooke; Homer O. Croasmun; James F. Deane; Claire DeVault; Jon T. Eicholtz; William C. Erickson; George Freitas; Sandford I. Gadient; J. L. Holleran; Ralph C. Hook; John Y. Inagaki; H. K. B. Keppeler; Rex S. Kuwasaki; Eugene W. I. Lau; Edmond H. Leavey; Jack H. McDonald; Estate of Jack D. Merriman; Administrator, Joe Jack Merriman; Glenn K. Mowry; L. M. Neves; James J. Peveler; William H. Pruyn; Edison C. Robinson; Dallas Rowley; John L. Smart; Edward D. Sultan, Jr.; James H. Tabor; Nicholas Wallner; Peat, Marwick, Mitchell & Co.; Coopers & Lybrand; and Deloitte, Haskins & Sells; and Does 1–50, Defendants.

No. 76–0512(29).
Civ. No. 79–0037.

United States District Court,
D. Hawaii.

April 21, 1980.

---

R. Charles Bocken, Damon, Key, Char & Bocken, Honolulu, Hawaii, Jerome L. Levine, Los Angeles, Cal., Loren R. Rothschild, Fogel, Julber, Reinhardt, Rothschild & Feldman, Los Angeles, Cal., for plaintiff.

Paul E. Maki, Honolulu, Hawaii, for Randolph Crossley.

Thomas P. Dunn, Honolulu, Hawaii, for Denis Alexander and Sandford I. Gadient.

H. K. B. Keppeler, Honolulu, Hawaii, pro se.

Louis B. Blissard, Honolulu, Hawaii, Jerome F. Downs, Thornton, Taylor & Downs, San Francisco, Cal., for Rex S. Kuwasaki.

Eugene W. I. Lau, pro se.

A. Alan Berger, San Jose, Cal., for Glenn K. Mowry.

James Peveler, pro se.

Carroll S. Taylor, Honolulu, Hawaii, for Dallas Rowley.

Joseph Schneider, Honolulu, Hawaii, for John L. Smart.

Nicholas Wallner, pro se.

George L. T. Kerr, Chun, Kerr & Dodd, Honolulu, Hawaii, G. Richard Doty, McCuthen, Black, Verleger & Shea, Los Angeles, Cal., for Peat, Marwick, Mitchell & Co.

Edward A. Jaffe, Cades, Schutte, Fleming & Wright, Honolulu, Hawaii, for Coopers & Lybrand.

Paul A. Lynch, Case, Kay & Lynch, Honolulu, Hawaii, Alfred I. Rothman, Loeb & Loeb, Los Angeles, Cal., for Deloitte, Haskins & Sells.

Thomas W. Flynn, Honolulu, Hawaii, for R. A. Anderson, Ralph Hook, L. M. Neves and James H. Tabor.

Benjamin M. Matsubara, Honolulu, Hawaii, Samuel O. Pruitt, Jr., Irwin Woodland, Los Angeles, Cal., for John A. Calfas and Jack H. McDonald.

Alan M. Goda, Honolulu, Hawaii, Theodore A. Kolb, Sullivan, Roche & Johnson, San Francisco, Cal., for George Q. Cannon, Samuel A. Cooke, Homer O. Croasmun, Edmond H. Leavey, and Edward D. Sultan, Jr.

James T. Paul, Honolulu, Hawaii, for Henry D. Clarke.

Raymond C. Sandler, Los Angeles, Cal., for James F. Deane.

Robert B. Griffith, Honolulu, Hawaii, for Claire DeVault.

Alexander C. Marrack, Honolulu, Hawaii, for Jon T. Eicholtz and William H. Pruyn.

Peter A. Lee, Honolulu, Hawaii, Robert T. Hurwitz, Kansas City, Mo., for Estate of Jack D. Merriman, Joe Jack Merriman, William C. Erickson, and Edison C. Robinson.

Howard K. Hoddick, Honolulu, Hawaii, for George Freitas.

J. L. Holleran, pro se.

Michael D. Hong, Honolulu, Hawaii, for John Y. Inagaki.

## MEMORANDUM OF OPINION

PENCE, Senior District Judge.

Plaintiff John T. Goss, Trustee of the Chapter X Estate of The Hawaii Corporation ("Trustee") seeks to compel Defendant Coopers & Lybrand ("Coopers") to produce various documents related to an action filed by Trustee on behalf of The Hawaii Corporation ("THC"). This Court concludes that Trustee is entitled to the requested documents subject to an appropriate protective order.

### FACTUAL BACKGROUND

In December 1976, THC, following a series of financial setbacks, filed a petition for relief under Chapter XI of the Bankruptcy Act. These proceedings were thereafter converted to a Chapter X reorganization proceeding, and on December 15, 1978, the Chapter X Trustee filed a complaint on behalf of THC charging its former directors and officers with negligence and the breach of various fiduciary, contractual, and statutory duties. In investigating these claims, Trustee obtained through discovery certain documents from Coopers, an independent auditing firm. Although Coopers was not at the time of discovery a party defendant to Trustee's action, Coopers had earlier conducted audits of THC for the fiscal years ending March 31, 1973, 1974, and 1975. The working papers from these audits were included in the documents produced by Coopers. In fact, Coopers made the working papers available to Trustee, his attorneys, and his accountants three times in response to separate discovery orders.

Subsequently, Trustee elected to prosecute claims against Coopers, joining Coopers as a party defendant in his second

amended complaint filed herein on June 27, 1979. Trustee asserted that THC had retained Coopers as an independent auditor to determine the propriety of the accounting principles employed by THC, to ascertain the adequacy of THC's internal accounting controls, and to correct any errors or omissions in THC's books, records and accounts which materially misstated the financial condition and results of THC operations. In performing these tasks, however, Coopers allegedly acted negligently and recklessly, failed to disclose to THC certain material facts, rendered opinions and reports which were false and misleading in material respects, and breached its contractual obligation to competently perform auditing services for THC. As a result, Trustee contends that THC and others mistakenly believed that the corporation was solvent and viable, and entered into a series of ill-advised transactions which would not have otherwise occurred.

On July 17, 1979, Trustee served his first request for production of documents directed to Coopers as a defendant requesting that Coopers produce and permit inspection and copying of the following documents:

(1) All documents and files in the possession, custody, or control of Defendant Coopers & Lybrand relating to THC and any of its divisions and subdivisions which were prepared, received, compiled or collected by Coopers & Lybrand at any time between January 1, 1970 and November 10, 1976 ("working papers").

(2) All personnel files and documents contained therein, including, without limitation, all performance evaluations and similar periodic evaluations of all partners of Defendant Coopers & Lybrand who were involved in any audit of THC and of all managers and supervisors employed by Coopers & Lybrand in any audit of THC ("personnel files").

Coopers, however, refused to produce the foregoing documents on the grounds that many of the documents sought had previously been made available to and were actually examined by Trustee three times, and further production was, therefore, "oppressive and unduly burdensome."[1] Coopers also objected for the reasons that inspection would cause "annoyance" and "embarrassment" and that the request was "overbroad and encompasse[d] irrelevant material."[2]

## DISCUSSION

The dispute between Coopers and Trustee over the discoverability of Coopers' working papers and personnel files revolves around the proper interpretation of certain provisions of the Federal Rules of Civil Procedure. Rule 34(a) authorizes requests to produce, inspect and copy designated documents relating to any matter within the scope of the examination permitted by Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served. Rule 26(b), in turn, permits the examination of any matter, not privileged, which is relevant to the subject matter involved in the pending action. The standard of relevancy prescribed therein embraces not merely documents which would be admissible in evidence, but also any documents "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b); 4 Moore's Federal Practice ¶ 26.56, at 26–116 (2d ed. 1979).

Rule 26(c), however, places a general restriction on the ability of parties to obtain discovery:

Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense . . . .

## Working Papers

Coopers does not dispute the fact that the relevancy requirement of Rule

---

**1.** Response of Defendant Coopers & Lybrand to Plaintiff's First Request for Production of Documents at 1.

**2.** *Id.*

26(b) poses no obstacle to Trustee's efforts to obtain discovery of the working papers. Coopers instead argues that because the working papers were previously made available to, and examined by, Trustee's representatives on three separate occasions, to compel it to undergo the expense of producing those papers a fourth time would be "oppressive and unduly burdensome" as comprehended by Rule 26(c).

• This court cannot agree. Trustee's earlier inspections of the requested working papers occurred before Coopers became a party to this action and, thus, careful consideration may not have been given to documents relevant to possible claims against Coopers and important information may have been overlooked. Since Coopers is now a defendant in this action, Trustee should be given a final opportunity to review the working papers with the action against Coopers specifically in mind. At the same time, however, fairness demands that THC bear any costs reasonably associated with Coopers' employees who are required to oversee Trustee's inspection of the working papers.

### Personnel Files

The more difficult question which faces this court is whether Coopers should be compelled to produce its personnel files and evaluations of employees involved in the THC audit. Whether such documents fall within the permissible scope of discovery is an unsettled question.[3]

■ As previously set forth, discovery is appropriate where the material sought is relevant and not privileged, Rule 26(b); unless, in light of the circumstances, the material sought is entitled to special protection under Rule 26(c). In an action based upon an auditing firm's negligent or otherwise improper performance of its professional duties, the relevance requirement is normally satisfied by the fact that the personnel files and employee evaluations should evince the qualifications, experience, and professional competence of individual auditors. Consequently, they may show or may lead to evidence showing, for example, that the auditing firm improperly failed to hire employees having sufficient skills to handle the work generally required of auditors, that the firm negligently delegated tasks to auditors who did not possess the necessary degree of experience and competence to perform those specific tasks, or that the firm did not provide supervisors with suitable qualifications. Moreover, personnel files and employee evaluations may even contain explicit descriptions of particular instances of employee negligence.

For the same reasons, Coopers' personnel files are also relevant to Trustee's claim in his second amended complaint that Coopers breached its contractual obligation to perform auditing services for THC with the ability, skill, and experience reasonably expected of a firm conducting an audit of a company the size and complexity of THC. *National Utility Service, Inc. v. Northwestern Steel and Wire Co.*, 426 F.2d 222 (7th Cir. 1970), lends further support to this conclusion. There, plaintiff, a utility rate analysis service, brought a breach of contract action against defendant utility company based upon the failure of the latter to pay service fees. Defendant, having asserted the defense that the rate analysis personnel did not possess the experience and technical competence which plaintiff represented, was permitted to obtain through discovery documents relating to the experience and competence of plaintiff's technical employees.

Coopers, however, cites *New York Stock Exchange, Inc. v. Sloan*, 22 Fed.R.Serv.2d 500 (S.D.N.Y.1976) as contrary authority. In *Sloan*, a stock exchange brought an action against a brokerage house, an accounting firm, and an oil company, alleging *inter*

---

**3.** This issue has apparently been litigated only twice. *New York Stock Exchange, Inc. v. Sloan*, 22 Fed.R.Serv.2d 500 (S.D.N.Y.1976) is the only reported case involving the compelled discovery of accountants' confidential employee evaluations. *See* discussion of *Sloan, infra.*

The other case, *SEC v. Republic Nat'l Life Ins. Co.*, 74 Civ. 1097 (MP) (S.D.N.Y.1974) is cited in footnote 1 of the *Sloan* case as an "unreported, and, indeed, unwritten, denial of a request for discovery of personnel evaluation records of an accounting firm."

*alia,* that the accounting firm's audits of the brokerage house were conducted in a negligent and illegal manner. Subsequently, the accounting firm, Haskins & Sells, cross-claimed against the oil company, Clinton, alleging that Clinton had deliberately failed to provide certain information during the audits with the intent to mislead Haskins & Sells into believing that Clinton's accounts, as appearing on the books of the brokerage house, were correct. Clinton then sought to compel disclosure of the Haskins & Sells' confidential personnel files which contained evaluations of the employees who had conducted the audits in question. The *Sloan* court ultimately denied Clinton's motion to compel on the grounds that the employee evaluations were irrelevant to the issues involved in the action.

Coopers concludes from *Sloan* that its own personnel files are similarly irrelevant here since Trustee's claims are also based upon allegations of an auditing firm's professional misconduct. This contention, however, requires an excessively broad reading of *Sloan* which this Court declines to adopt.

Although the court in *Sloan* refused to order disclosure of certain personnel files in an action arising from alleged auditing misconduct, nothing contained in *Sloan* supports the inference that an auditing firm's personnel files are always irrelevant to the firm's professional misconduct. Instead, *Sloan* stands only for the limited proposition that personnel files are not relevant to a particular kind of professional negligence—namely—negligence in conducting the audit. As the term seems to be used by the *Sloan* court, negligence in "conducting" an audit refers only to the procedures or steps necessary to perform the audit, as distinct from the process of selecting the employees who "conduct" the audit or the general competence of those employees. For example, the court stated:

> Since the real subject matter is the manner of . . . conduct of the audit, and *not the selection of personnel for the audit,* the materials sought here are not 'relevant to the subject matter involved in the pending action,' and thus are not within the scope of discovery under Fed. R.Civ.P. 26(b).

22 Fed.R.Serv.2d at 503 (emphasis added).

█ Although this court has some difficulty in apprehending the rationale for *Sloan*'s distinction between negligence in "conducting the audit" and the selection of sufficiently skilled employees to perform the audit, arguably an integral part of the "conducting" of the audit, that question need not be resolved here. No persuasive reason exists for reading Trustee's complaint against Coopers to allege only that Coopers improperly "conducted" its audit, as that term is employed in *Sloan.* While Trustee makes the allegation of improper conduct, at the same time Trustee's complaint also speaks generally of Coopers' negligence and recklessness in issuing its reports and opinions and in failing to discover errors in THC's accounting practices. Reading the latter contentions liberally for the purposes of this discovery motion, as required by accepted rules of notice pleading and discovery,[4] this Court must conclude that Trustee's complaint sweeps broadly enough to raise the issue that Coopers was negligent and reckless, not only in the conduct of its audit, but also in selecting and assigning employees, and in fur-

---

**4.** The case law makes it quite clear that relevance for discovery purposes is not to be limited to the precise issues framed by the pleadings, but is to be measured by the general relevance to the subject matter. *In re Folding Carton Antitrust Litigation,* 76 F.R.D. 420 (N.D. Ill.1977); *Miller v. Doctor's General Hospital,* 76 F.R.D. 136 (W.D.Okl.1977); *Marshall v. Electric Hose & Rubber Co.,* 68 F.R.D. 287 (D.Del.1975); *United States v. International Business Machines Corp.,* 66 F.R.D. 180 (S.D.N. Y.1974); *La Chemise LaCoste v. Alligator Co.,* *Inc.,* 60 F.R.D. 164 (D.Del.1973). This is a matter of some importance, for in the federal pleading system, where usually pleadings are extremely skeletal and designed as little more than notice mechanisms, discovery is important in determining the issues to be tried, as well as in discovering evidence. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978); *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

nishing supervision. Personnel files, as discussed earlier, are clearly relevant to the latter issues.

Moreover, nothing contained in *Sloan* prohibits the liberal interpretation of Trustee's complaint adopted here. In *Sloan* no precise language in movant's complaint is identified which compels the court to conclude that only the "conduct" of the Haskins & Sells audit was at issue, even assuming such language existed. Instead, the *Sloan* court states that Clinton, the moving party for the discovery order, admitted that "the issue [was] whether the audit was properly conducted." 22 Fed.R.Serv.2d at 502. Trustee has made no such admission here.

Further, the *Sloan* court refused to permit Clinton to rely on the issue of the negligent selection of auditors because Clinton had failed to raise the issue for a full five years after the litigation had commenced. In the present case, however, no similar delay in putting Coopers on notice of the negligent selection issue occurred. Trustee's counsel explicitly raised the issue at the hearing on Trustee's motion to compel production on October 5, 1979, only four months after the initiation of the action against Coopers by the filing of the second amended complaint on June 27, 1979. Accordingly, *Sloan* is not inconsistent with the view expressed earlier that Coopers' personnel files are relevant to Trustee's action.

*Sloan*, though, has another aspect, wholly apart from questions of relevancy, which Coopers uses to support its contention that the personnel files should be protected from discovery. The court in *Sloan* stated that even assuming personnel files are relevant for the purposes of Rule 26(b), public policy favoring personal privacy and candid employee performance evaluations might prevent discovery of personnel files. 22 Fed.R. Serv.2d at 503. Here, Coopers advances similar public policy considerations against discovery. In particular, Coopers argues that revealing the contents of the personnel files would breach its employees' expectations of confidentiality and cause serious morale problems. Further, Coopers maintains that if discovery of personnel files is generally allowed, accounting firms might cease to frankly criticize their own performance for fear that any written evaluations they prepare may be used against them or their employees in a lawsuit. By chilling the free flow of candid communications in this manner, the ability of accounting firms to maintain their standards and to improve employee performance will arguably be impaired.

■ Although the weightiness of these public policy interests is conceded, it cannot be denied that countervailing interests which support discovery are also at work. Discovery must be accorded a broad and liberal scope in order to provide both parties with information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978); *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *Stark v. Photo Researchers, Inc.*, 77 F.R.D. 18 (S.D.N.Y. 1977); *Xerox Corp. v. International Business Machines Corp.*, 75 F.R.D. 668 (S.D.N. Y.1977); *Mallinckrodt Chemical Works v. Goldman, Sachs & Co.*, 58 F.R.D. 348 (S.D. N.Y.1973).

The *Sloan* court itself recognized that these policies may demand the disclosure of personnel files despite the conflicting policies favoring non-disclosure. Accordingly, *Sloan* did not purport to create an automatic bar to discovery of personnel files. Rather, following well-established law, the court held that even where strong public policy against disclosure exists, as in the case of personnel files, discovery is nonetheless allowed if (1) the material sought is "clearly relevant," and (2) the need for discovery is compelling because the information sought is not otherwise readily obtainable.[5]

---

**5.** *New York Stock Exchange, Inc. v. Sloan,* 22 Fed. R. Serv. 2d at 505 (citing *Cooper v. Hallgarten & Co.,* 34 F.R.D. 482, 483–484 (S.D. N.Y.1964)). *See also, Smith v. Bader,* 83 F.R.D. 437, 438 (S.D.N.Y.1979); *Shaver v. Yacht Outward Bound,* 71 F.R.D. 561, 564 (N.D.Ill.1976);

In the present case, this court finds that the preceding test is satisfied. As discussed previously, Coopers' personnel files are clearly relevant to the claims brought by Trustee. The analysis which produced this conclusion need not be repeated here. Trustee has also shown a compelling need for the personnel files. The files contain a contemporaneous evaluation and description of Coopers' auditing work for THC, and were made without litigation in mind, giving the personnel files an inherent reliability which cannot now be duplicated by any other source of evidence. Therefore, Coopers' personnel files will be ordered produced.

### Protective Order

The court, however, being sensitive to the strong interests of employees' privacy and the need to preserve the free flow of candid communications in an accounting office, orders Coopers to produce the requested personnel files and employee evaluations subject to the following Protective Order:

(1) The personnel files may be examined only by Trustee's counsel and by persons acting under the direction and control of counsel.

(2) The personnel files are to be produced solely for the use of Trustee's counsel in this litigation, and for no other purpose.

(3) No additional copies, extracts, summaries or other material prepared from the personnel files shall be made except by counsel or persons acting under the direction and control of counsel, and then only for the purposes stated herein.

(4) All copies, extracts, summaries or other material contained in the personnel files are subject to the protective order, must bear a legend to that effect, and cannot be disclosed to any person other than Trustee's

counsel and persons acting under the direction and control of counsel.

(5) Documents contained in the personnel files may not be submitted as evidentiary matter in this litigation without the consent of Coopers & Lybrand unless the use of such documents has been authorized by the court following in-camera inspection.

(6) Any document or information contained in the personnel files which is filed in this litigation must be filed under seal.

(7) At the conclusion of this litigation, all copies, extracts, summaries and other materials prepared from the personnel files must be returned to Coopers & Lybrand.

### CONCLUSION

Based on the foregoing analysis, Coopers & Lybrand is ordered to produce and permit Trustee to inspect and copy or photograph the working papers as described in Trustee's first request for production of documents directed to Coopers & Lybrand. In addition, Trustee shall pay the reasonable cost to Coopers of having a person in its employ present during the inspection and copying or photocopying of the documents.

Coopers & Lybrand is further ordered to produce and permit Trustee to inspect and copy or photograph the personnel files and employee evaluations as described in Trustee's first request for production of documents, subject to the above-mentioned Protective Order.

### ON MOTION FOR RECONSIDERATION

Subsequent to the court's order of November 1, 1979, granting Trustee's motion to compel the requested working papers and personnel files, Coopers & Lybrand filed a motion seeking reconsideration of that part of the Court's order which compelled Coo-

---

*Richland Wholesale Liquors, Inc. v. Joseph E. Seagram,* 40 F.R.D. 480, 482–483 (D.S.C.1966); *United States v. American Optical Co.,* 39 F.R.D. 580, 589 (N.D.Cal.1966).

Numerous cases, in fact, have allowed discovery of personnel files. *See, for example, Rich v. Martin Marietta Corp.,* 522 F.2d 333 (10th Cir. 1975); *Equal Employment Opportunity Commission v. University of New Mexico,*

*Albuquerque,* 504 F.2d 1296 (10th Cir. 1974); *National Utility Service, Inc. v. Northwestern Steel and Wire Co., supra,* 426 F.2d 222; *Georgia Power Co. v. Equal Employment Opportunity Commission,* 412 F.2d 462 (5th Cir. 1969); *Goldman v. Checker Taxi Co.,* 325 F.2d 853 (7th Cir. 1963); *Haykel v. G. F. L. Furniture Leasing Co.,* 76 F.R.D. 386 (N.D.Ga.1976).

pers to produce its personnel files. Coopers offers two additional unpublished decisions wherein discovery of accounting firms' personnel files was denied. The decisions are *Dresser Industries, Inc. v. Robinson*, Civ. No. 71–H–789 (S.D.Tex. August 2, 1978) and *Seiffer v. Topsy's International, Inc.*, Civ. No. KC–3435 (D.Kan. May 21, 1975). These cases, however, are not entitled to the force of controlling precedent. Moreover, the reasoning contained therein does not persuade this Court that on the present facts Coopers should not be compelled to produce its personnel files.

Accordingly, Coopers & Lybrand's motion for reconsideration is DENIED.