Sharon COSTER, Respondent-Appellant,

v.

Benny W. COSTER, Petitioner-Appellee.

No. 1–1082A293.

Court of Appeals of Indiana,
First District.

Aug. 9, 1983.

Stephen R. Heimann, Michael A. Mullett, Columbus, for respondent-appellant.

Harold A. Harrell, William K. Steger, Bunger, Harrell & Robertson, Bloomington, for petitioner-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Respondent-appellant Sharon Coster (Wife) appeals from a decree of the Monroe Superior Court dissolving her marriage to petitioner-appellee Benny W. Coster (Husband) and ordering child support for their minor child. The issues presented for review concern pretrial discovery, disposition of the marital assets, and the order of child support.

We affirm.

## STATEMENT OF THE FACTS

The parties were married on October 10, 1954. Husband filed his petition for Dissolution of Marriage on September 21, 1977. The Decree of Dissolution was entered on August 2, 1982, following the trial, which had been continued eight times and which was finally held on June 8 and 9, 1982, following three pretrial hearings on discovery issues.

Three children were born of the marriage. At the time of the final hearing, the only remaining minor had just completed his first year as an undergraduate student at Indiana University. During the marriage, Husband was employed as an agent of State Farm Insurance Company. Wife did not work outside of the home; however, she did aid Husband in conducting the social activities of his insurance agency.

The entire marital estate was acquired by the parties during the marriage, neither party receiving significant assets by gift or inheritance. Husband exercised sole control over the parties' finances during the marriage. Pending final dissolution of the marriage, much controversy arose over the value of the marital assets. This led to the prolongment of pretrial discovery on this issue, which discovery was terminated by the trial court's order of March 11, 1982.

In its formal Decree of Dissolution, the trial court awarded Wife the residence and its contents, free of the mortgage obligation; two automobiles; attorney's fees; stock; and an amount of cash to be paid, in part, by installments. In addition, Wife retained custody of the minor child while Husband was ordered to pay all insurance, college and living expenses incurred by the son, so long as he remained a full-time college student. Husband was awarded the business property and equipment, Florida real estate, assorted personal property, and his Individual Retirement Account.

## ISSUES

Wife presents three issues for review:

I. Whether the trial court abused its discretion by terminating discovery four and one half years after the Petition for Dissolution was filed;

II. Whether the trial court erred in ordering the disposition of the marital assets without disclosing the bases on which the award rested, and in failing to make specific findings of fact and conclusions of law; and

III. Whether the trial court's disposition of the marital assets amounted to an abuse of discretion.

## DISCUSSION AND DECISION

*Issue I. Termination of discovery*

Wife alleges the trial court erred in ordering all discovery terminated on March 11, 1982. An examination of the record reveals that Wife initiated discovery on November 9, 1977, less than two months after Husband petitioned for dissolution of the marriage. In response to her requests, information was provided by Husband over the next four years. Husband answered each set of interrogatories propounded by Wife; he provided a financial statement compiled by a certified public accountant, and nearly 150 envelopes containing detailed explanations of his periodic employment compensation. He met with Wife's attorney at his office to go over the agen-

cy's finances, and testified at the pretrial discovery hearings and the trial.

Husband's employer, State Farm Insurance, yielded data showing Husband's past and present earnings through his employment as an agent of State Farm. This information was to be used in determining the future value of the agency to Husband. Although his employment contract stipulated, and the Vice President of State Farm testified, that Husband had no saleable or vested interest in the agency and that the agency should be valued at zero on a financial statement, Wife persisted in her requests for further information. This perseverance grew out of her belief that the future value of the agency was a factor to be considered in the division of the marital property.

Three pretrial hearings were conducted on the discovery of Husband's compensation from, and interest in, his State Farm Insurance agency. At each hearing the trial court attempted to ascertain which data not already provided Wife and her financial expert was necessary to their accurate valuation. Husband and State Farm's Vice President testified repeatedly that Husband's only profit from the agency, present or anticipated, derived from a percentage commission of the actual premiums paid by insureds to the company. Each hearing culminated in a debate; Husband and State Farm stating that Wife possessed all information relevant to a valuation of Husband's expected profits through the agency, Wife's financial expert insisting he needed more specific policy information to determine Husband's future interest in the agency.

 We note at the outset that our Ind. Rules of Procedure, Trial Rule 26 is patterned after the Federal Rules of Civil Procedure relating to Discovery; therefore, authorities on the latter are relevant in construing our Indiana rule. *Rembold Motors, Inc. v. Bonfield,* (1973) 155 Ind.App. 422, 293 N.E.2d 210. Discovery must be accorded a broad and liberal scope to provide all parties with information essential to the proper litigation of all relevant issues, to eliminate surprise, and to promote

settlement. *Matter of Hawaii Corporation v. Crossley,* (1980) 88 F.R.D. 518. However, "discovery, like all matters of procedure, has ultimate and necessary boundaries." *Hickman v. Taylor,* (1947) 329 U.S. 495, 507, 67 S.Ct. 385, 391, 91 L.Ed. 451. The trial court has broad discretion in ruling on issues of discovery and this court will only interfere where an abuse of discretion is apparent. *Campbell v. Eli Lilly and Company,* (1980) Ind.App., 413 N.E.2d 1054. It is within the discretion of the trial court to place bounds on the extent of discovery. *Goldman v. Checker Taxi Company,* (7th Cir.1963) 325 F.2d 853. Thus, the trial court may require discovery be completed by a certain date to prevent delay of the trial. *Kelberine v. Societe Internationale,* (D.C.Cir.1966) 363 F.2d 989, *cert. denied* 385 U.S. 989, 87 S.Ct. 595, 17 L.Ed.2d 450. The trial court may refuse to continue a trial date in order that further discovery can be conducted. *MacKay v. American Potash & Chemical Co.,* (9th Cir.1959) 268 F.2d 512. Inherent in the trial court's power to prescribe the terms and conditions of discovery is the discretion to change or modify its orders as subsequent events may warrant. *Martin v. Reynolds Metals Corporation,* (9th Cir.1961) 297 F.2d 49. For example, the trial court may deny a request for further discovery on an issue, where it determines information sufficient to prepare a party's case on that issue has been exchanged, *see United States v. 412.93 Acres of Land,* (3rd Cir.1972) 455 F.2d 1242; or where it determines that the information sought has already been provided through prior discovery proceedings. *Marcovich Land Corporation v. J.J. Newberry Company,* (1980) Ind.App., 413 N.E.2d 935; *Sue v. Chicago Transit Authority,* (7th Cir.1960) 279 F.2d 416.

 In practice, the broad discretion allotted the trial court in ruling on discovery matters, coupled with the harmless error doctrine, will bar reversal except in the unusual case. *Swanner v. United States,* (5th Cir.1969) 406 F.2d 716. There will be no reversal of a trial court discovery order without a showing of prejudice by the

moving party. *NLRB v. Seine and Line Fishermen's Union of San Pedro,* (9th Cir. 1967) 374 F.2d 974, *cert. denied* 389 U.S. 913, 88 S.Ct. 239, 19 L.Ed.2d 261. *See* Ind. Rules of Procedure, Trial Rule 61. In a divorce case, this court held that the trial court's denial of a motion to compel the wife to answer the husband's interrogatories more fully was not an abuse of discretion. *Kujaca v. Kujaca,* (1973) 159 Ind.App. 6, 304 N.E.2d 870. The husband claimed the answers were made in bad faith, were incomplete, and evasive. However, even if this was true, the husband made no showing of prejudicial error and, thus, reversal of the trial court was not warranted.

 Following the rationale of the above decisions, we find no abuse of discretion in this trial court's termination of all discovery 53 months after the inception of the suit. Discovery had been an on-going affair for nearly five years. Perusal of the trial court docket sheet and Wife's exhibits at trial show that Wife had obtained eight continuances and a knee-high stack of information pertaining to the dissolution during that time. The trial court could readily have concluded that Wife had superfluous data covering Husband's financial interest in his State Farm Insurance agency with which to prepare her case.

Wife argues that even if it would have been within the trial court's discretion to bar further discovery on one issue, it was reversible error to terminate all discovery following the third pretrial hearing. We cannot agree. Wife had ample time in which to have secured all information necessary to her case; in fact, much of the original data provided by Husband had already been updated. Moreover, Wife has shown no prejudicial error resulting from the court's termination of all discovery. At the time of the trial court's order, the only information still sought by Wife concerned the future value of Husband's State Farm agency. At trial, Wife's financial expert testified that he had been able to determine the present value of Husband's future commissions from State Farm relevant to the division of the marital assets. He also admitted Husband had no saleable or vested interest in the agency itself. Additional discovery on any issue would only have amounted to further, unwarranted delay of the trial and the final dissolution of the marriage.

*Issue II. Absence of special findings of fact and conclusions of law*

 Wife contends that the trial court committed reversible error by failing to make specific findings of fact and conclusions of law setting out the bases for its division of the marital property. However, Wife's request for specific findings of fact and conclusions of law was untimely. Ind. Rules of Procedure, Trial Rule 52. A written request must be filed prior to the admission of evidence. Wife's request was filed after the trial court had issued its Order of Memorandum of Decision, outlining the final decree. Wife argues that T.R. 52, and Ind.Code 31–1–11.5–8(a) and 31–1–11.5–9(a), require the trial court in a marriage dissolution proceeding to make specific findings and conclusions absent any such request. We do not agree. In another divorce case, this court stated:

> "[I]n the absence of a request by one of the parties that the trial court make special findings of fact no error is committed by the trial court in not *sua sponte* making special findings of fact. *See,* TR 52(A); *Lamb v. Conder* (1975), [166] Ind. App. [293], 335 N.E.2d 625; *Weiss v. Weiss* (1974), [159] Ind.App. [231], 306 N.E.2d 120."

*Stevenson v. Stevenson,* (1977) 173 Ind.App. 495, 364 N.E.2d 161, 165.

Ind.Code 31–1–11.5–8(a) reads, in part: "In an action pursuant to section 3(a) of this chapter, a final hearing shall be conducted no earlier than sixty (60) days after the filing of the petition. If a petition has been filed under section 3(c) of this chapter, a final hearing on a petition or counter petition subsequently filed under section 3(a) of this chapter may be held at any time after sixty (60) days after the petition under section 3(c) of this chapter has been filed. Upon the final hearing: the court shall hear evi-

dence and, if it *finds* that the material allegations of the petition are true, either enter a dissolution decree as provided in section 9(a) of this chapter or if the court *finds* that there is a reasonable possibility of reconciliation, the court may continue the matter and may order the parties to seek reconciliation through any available counseling." (Footnotes omitted; our emphasis.)

Ind.Code 31–1–11.5–9(a) reads:

"In an action pursuant to section 3(a) of this chapter when the court has made the *findings* required by section 8(a) of this chapter, the court shall enter a dissolution decree. The decree may include orders as provided for in this chapter.

A dissolution decree shall become final when entered, subject to the right of appeal. An appeal from the provisions of a dissolution decree that does not challenge the *findings* as to the dissolution of said marriage shall not delay the finality of that provision of the decree which dissolves the marriage, so that the parties may remarry pending appeal." (Footnotes omitted; our emphasis.)

Ind.Code 31–1–11.5–3(a) reads:

"Dissolution of marriage which shall be decreed upon a *finding* by a court of one (1) of the following grounds, and no other:

 (1) Irretrievable breakdown of the marriage.

 (2) The conviction of either of the parties, subsequent to the marriage, of a felony.

 (3) Impotency, existing at the time of the marriage.

 (4) Incurable insanity of either party for a period of at least two (2) years." (Our emphasis.)

■ These sections of the Indiana Code, when taken together, require only that the trial court find one of the grounds for dissolution of the marriage has been met, before entering a final decree. They do not call for special findings. Here, in its Decree of Dissolution, the trial court found that "the marriage of the parties suffers from an irretrievable breakdown and there is no rea-

sonable possibility of reconciliation." This finding is sufficient to satisfy the Indiana Code requirements.

Wife's argument centers around three issues: child support, maintenance, and the property division. She claims that these awards, as made, are ambiguous and call for specific findings and conclusions for clarification.

■ The awards of child support and the specific marital property are self-explanatory. A multitude of evidence on these issues was introduced at the three pretrial hearings and at the trial. Both awards are within the discretion of the trial court and will not be disturbed on appeal unless abuse of that discretion is apparent. *Loeb v. Loeb,* (1973) 261 Ind. 193, 301 N.E.2d 349; *Inkoff v. Inkoff,* (1974) 159 Ind.App. 239, 306 N.E.2d 132. We find no abuse of discretion. We may not substitute our judgment for that of the trial court simply because the evidence might support a different conclusion. *McBride v. McBride,* (1981) Ind.App., 427 N.E.2d 1148.

Wife criticizes the following monetary award, asserting it is unclear whether it is to be construed as a maintenance provision, or a portion of the property division paid in installments.

"8. Husband shall pay to Wife the lump sum of $10,000.00 within thirty (30) days from the date of this order, and shall pay to the Wife the additional sum of $500.00 per month each month thereafter for 121 consecutive months with the first payment to be made the second Monday following the date of this Entry, and on the same day of each month, with statutory interest accruing on the unpaid balance; the same to be collectable without relief, with attorney's fees, if legal action is necessary to accomplish said collection."

Ind.Code 31–1–11.5–9(c) states:

"The court may make no provision for maintenance ... except that when the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of such incapacitated spouse to

support himself or herself is materially affected, the court may make provision for the maintenance of said spouse during any such incapacity, subject to further order of the court."

Ind.Code 31–1–11.5–11(b) states:

"In an action pursuant to section 3(a) of this chapter, the court shall divide the property of the parties, whether owned by either spouse prior to the marriage, acquired by either spouse in his or her own right after the marriage and prior to final separation of the parties, or acquired by their joint efforts, in a just and reasonable manner, either by division of the property in kind, or by setting the same or parts thereof over to one (1) of the spouses and requiring either to pay such sum, either in gross or in installments, as may be just and proper, or by ordering the sale of the same under such conditions as the court may prescribe and dividing the proceeds of such sale."

■ Our statutes require some impairment of a spouse's self-support abilities before maintenance may be awarded. Wife's psychiatrist did testify that, in his opinion, Wife would be unable to work for six months to one year after the divorce proceedings, due to her emotional condition. However, even when evidence has been admitted showing mental or physical incapacity materially affecting a spouse's ability of self-support, a grant of maintenance is still optional, within the discretion of the trial court. *Farthing v. Farthing,* (1979) 178 Ind.App. 336, 382 N.E.2d 941.

■ Construing language found in recent Indiana appellate cases, it appears an award consisting of periodic payments in a Decree of Dissolution will be construed as maintenance only if one of two requisites is met. The trial court may include in the dissolution decree a finding of mental or physical incapacity materially affecting the spouse's ability to be self-supportive. Without such a finding, an award may still be regarded as maintenance if specifically designated as "support" or "maintenance." In the latter case, the finding is implicit in the grant of maintenance and need only be sufficiently supported by the evidence. *Melnik v. Melnik,* (1980) Ind.App., 413 N.E.2d 969, 971; *Farthing, supra.*[1] *But see Savage v. Savage,* (1978) 176 Ind.App. 89, 374 N.E.2d 536 (to award support, trial court must make the requisite finding and designate the payments as such).

■ In the present case, the trial court complied with neither requirement, leading this court to conclude that the periodic payments were simply installments in the marital property division, pursuant to Ind.Code 31–1–11.5–11(b). However, this analysis is unnecessary to our determination. Scrutinizing the award itself, we note the provision for statutory interest is characteristic of a debt settlement, and is often found in installment cash awards of marital property. *See Hasty v. Hasty,* (1981) Ind.App., 427 N.E.2d 1119; *White v. White,* (1975) 167 Ind.App. 459, 338 N.E.2d 749. There is no clause terminating the payments upon the death of either Wife or of Husband, as is common in maintenance awards. *See Whaley v. Whaley,* (1982) Ind.App., 436 N.E.2d 816; *Hicks v. Fielman,* (1981) Ind.App., 421 N.E.2d 716. Moreover, the amount of the award in this case does not exceed the value of the marital assets. If the installments were to be made from income earned in the future, they would not come within the ambit of "marital assets" and would be considered impermissible maintenance payments, absent the requisite finding or designation. *Irwin v. Irwin,* (1980) Ind.App., 406 N.E.2d 317; *Savage, supra.* Thus, the award of period payments is not ambiguous; it is simply a provision for installment cash payments in aid of the marital property division.

### Issue III. Disposition of marital assets

Wife argues that the trial court's disposition of the marital assets, awarding her

---

1. However, the better trial court practice would be to designate the award as maintenance *and* include a finding of sufficient incapacity materially affecting that spouse's ability to be self-supportive.

approximately 57 percent of those assets, constituted reversible error. She asserts that the trial court did not divide the property in a just and reasonable manner, according to Ind.Code 31–1–11.5–11. We cannot agree.

The trial court has broad discretion in dividing the marital assets in a dissolution proceeding. This court will examine the trial court's order only for an abuse of that discretion. We will reverse the trial court only if the division is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable deductions to be drawn therefrom. *Cunningham v. Cunningham,* (1982) Ind.App., 430 N.E.2d 809. There is a strong presumption that the trial court considered the statutory factors found in Ind.Code 31–1–11.5–11, and properly applied them to its division of the marital assets. *In re Marriage of Patus,* (1978) 175 Ind.App. 459, 372 N.E.2d 493.

Wife contends that the trial court's roughly even split of the marital assets was erroneous in this case. The record reveals a plethora of conflicting evidence regarding the value of the marital assets. This court will not reweigh the evidence or determine the credibility of the witnesses. Rather, we will only consider the evidence in the light most favorable to the judgment. *Morphew v. Morphew,* (1981) Ind.App., 419 N.E.2d 770. We find no error. In arriving at a just and reasonable disposition of the marital assets, the trial court need not split the property equally between the parties. However, such a division is within the trial court's discretion and does not, alone, imply error. *See, In re Marriage of Patus, supra; Cornett v. Cornett,* (1980) Ind.App., 412 N.E.2d 1232.

For the above reasons this cause is affirmed.

Affirmed.

ROBERTSON, P.J., concurs.

RATLIFF, J., concurs with opinion.

RATLIFF, Judge, concurring.

I concur in the affirmance of the judgment in this case. However, I take exception to that portion of the majority opinion which tends to say that an award of maintenance may be made absent a specific finding of mental or physical incapacity materially affecting the spouse's ability to be self-supportive because if the award is designated specifically as "support" or "maintenance", such a finding is implicit in that designation and need only be supported by the evidence. I believe this statement is not supported by the cases cited, is contrary to the clear language of the statute, Ind. Code § 31–1–11.5–9(c) and is in direct contravention of the holding of this court in *Savage v. Savage,* (1978) 176 Ind.App. 89, 374 N.E.2d 536.

In *Melnik v. Melnik,* (1980) Ind.App., 413 N.E.2d 969, 972, the statement relied upon by the majority is dictum. *Melnik* involved a *denial* of a request for maintenance. The holding in *Melnik* is that no specific findings are necessary to support a *denial* of maintenance.

*Farthing v. Farthing,* (1978) 178 Ind.App. 336, 382 N.E.2d 941, also cited by the majority, is an appeal from a modification of a maintenance award. The original award did not contain the statutorily specified finding, but, apparently, that defect was never questioned. The court found in the modification order that the wife was still mentally incapacitated. Thus, despite the language in *Farthing* that a specific finding is not necessary and that an award clearly designated as "maintenance" implies the requisite finding, the fact is there was a finding the wife was mentally incapacitated.

In *Savage* this court stated that "[i]f the trial court desires to award periodic payments to one spouse as support, then it must make the requisite finding under IC 1971, 31–1–11.5–9(c) and designate the payments as such." 176 Ind.App. at 94, 374 N.E.2d at 540. Further, in *In re Marriage of Lewis,* (1977) 172 Ind.App. 463, 360 N.E.2d 855, *trans. denied,* a case noted in *Farthing* as requiring such a finding where

the award is designated other than maintenance, this court clearly stated that "[a]bsent a finding that [the wife] is 'physically or mentally incapacited to the extent that the ability of such incapacitated spouse to support ... herself is materially affected,' the trial court may make no provision for maintenance." 172 Ind.App. at 466, 360 N.E.2d at 857. I read no words limiting that holding as suggested in footnote 2 in *Farthing.* In my view, the language quoted from *Savage* and *Lewis* clearly holds that the court must make the specific finding called for by the statute if maintenance *is awarded.*

While I disagree with the statements of the majority regarding the necessity of such a finding, I agree that maintenance was not awarded, hence no finding was necessary. The language employed which I find objectionable has no impact upon the ultimate decision in this case, which decision is correct. Therefore, I concur.